O

# United States District Court
# Central District of California

| | |
|---|---|
| STEPHEN RANGEL,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>AETNA LIFE INSURANCE COMPANY<br>and DOES 1-10, inclusive,<br><br>　　　　　　Defendants. | Case № 5:15-cv-00303-ODW (KKx)<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS [19]** |

## I.　INTRODUCTION

This is an action seeking judicial review of the denial of disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"). After one year of litigation, Plaintiff Stephen Rangel and Defendant Aetna Life Insurance Company ("Aetna") settled the claim. Plaintiff now moves for an award of attorney's fees and costs under 29 U.S.C. § 1132(g)(1). For the reasons discussed below, the Court **GRANTS IN PART** Rangel's Motion, and awards Plaintiff $41,650.00 in attorney's fees and $2,495.90 in costs.[1]

///

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## II. FACTUAL BACKGROUND

This case arose after Aetna allegedly denied disability benefits to Rangel under the insurance plan established by Home Depot, Rangel's employer. (Compl. ¶¶ 22, 24.) On February 20, 2015, after exhausting his administrative remedies, Rangel sued Aetna. (*See id*. ¶ 1.) On February 2, 2016, the parties reached a settlement after a private mediation. (*See* Not. of Partial Settlement, ECF No. 16.) As part of the settlement, the parties stipulated that Rangel was the prevailing party. (*Id.* ¶ 1.) On March 7, 2016, Rangel filed this Motion requesting $62,550.00 in attorney's fees and $2,495.90 in costs. (Mot. 15.)

Aetna objects to the amount sought, noting that this litigation involved no discovery, no motion practice, and no novel legal issues. (Opp'n 6, ECF No. 20.) Aetna asks the Court to deny the Motion in its entirety or, in the alternative, significantly reduce the amount awarded. (*See id*.) Rangel filed a timely reply, reiterating that the Court should grant fees and costs in the full amount sought. (*See* ECF No. 22.) That Motion is now before the Court for consideration.

## III. LEGAL STANDARD

ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C § 1132(g)(1). Additionally, the Ninth Circuit has held that ERISA should be liberally construed in favor of protecting participants in employee benefit plans. *E.g.*, *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir. 1984). Therefore, the attorney's fee provision should be "read broadly to mean that a plan participant or beneficiary, if he prevails in his suit under § 1132 to enforce his rights under his plan, 'should ordinarily recover attorney's fees unless special circumstances would render such an award unjust.'" *Id*. (citation omitted).

## IV. DISCUSSION

Before calculating attorney's fees under ERISA, the Court must determine that (1) the party seeking fees has achieved some degree of success on the merits and that

(2) the factors enumerated by the Ninth Circuit in *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446 (9th Cir. 1980), justify an award of fees. As detailed below, Rangel has met both requirements. *See Smith*, 746 F.2d at 589.

### A.     Success on the Merits

Success on the merits for the purposes of § 1132(g)(1) asks the claimant to meet a fairly low threshold. A claimant satisfies this requirement if the court can fairly say that the outcome of the litigation featured some success on the merits without conducting a "lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.'" *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 686 (1983)). Here, the parties reached a voluntary resolution of Rangel's claim for long-term disability benefits and designated Rangel as the prevailing party. (ECF No. 16.) That Rangel received some portion of what he sued to recover indicates some measure of success on the merits, even if this came by way of voluntary settlement rather than by court judgment. *See Smith*, 746 F.2d at 591 (noting that ERISA plaintiff received a portion of what he brought suit to recover by way of settlement and thus crossed the "statutory threshold" entitling him to recover attorney's fees).

### B.     *Hummell* Factors

The *Hummel* factors guide the Court in exercising its discretion under § 1132(g). Before awarding fees under ERISA, a court should consider: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Hummell*, 634 F.2d at 453. A court may reduce the requested fees or deny fees altogether based on an application of the *Hummel* factors. *See Carpenters S. Cal. Admin. Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir. 1984).

The Court addresses each factor in turn.

### 1. Bad Faith

Although the Court has not addressed the disability benefits issue in this matter, Rangel contends that Aetna's denial of benefits alone constitutes bad faith. (Mot. 8–9.) Under Ninth Circuit precedent, however, the Court cannot presume bad faith simply because an insurance provider denied benefits under a plan. *See Smith*, 746 F.2d at 590. As Rangel fails to provide other evidence of culpable or bad faith conduct by Aetna, the Court determines that this factor is neutral with respect to the potential award of attorney's fees. *Carpenters S. Cal. Admin. Corp.*, 726 F.2d at 1416 ("No one of the *Hummell* factors . . . is necessarily decisive, and some may not be pertinent in a given case.").

### 2. Ability to Satisfy an Award of Fees

Neither party disputes that Aetna is capable of satisfying an award of fees—Aetna certainly has the means. (*See* Mot. 9; Opp'n 8.) Aetna argues, however, that it should not be responsible for Rangel's fees just because it has the ability to pay. (Opp'n 8.) While the Court agrees that this factor is not dispositive, it is given heavy weight. "Based on the [ability to pay] factor alone, absent special circumstances, a prevailing ERISA employee plaintiff should ordinarily receive attorney's fees from the defendant." *Smith*, 746 F.2d at 587. Because the parties agreed to designate Rangel as the prevailing party, this factor weighs strongly in favor of awarding attorney's fees.

### 3. Deterrence

The next factor considers whether awarding fees in this matter will deter other employers from denying meritorious benefit claims in similar circumstances. Rangel offers no reason as to why this factor should weigh in his favor, other than simply stating that an award of fees would deter insurers from "acting improperly in denying clearly legitimate claims." (Mot. 4.) Aetna counters that there are no findings of fact or conclusions of law to support Rangel's position. Aetna further contends that it

simply determined that Rangel did not qualify for long-term disability benefits; Aetna decided to defend its decision in court and argues that it should not be penalized for doing so. (Opp'n 8.)

The deterrence factor weighs in favor of granting attorney's fees if it would deter trustees from opposing employee participant claims when the amount and the reasonableness of the employee's claim indicate a likelihood of success. *Smith*, 746 F.2d at 590. As previously stated, the Court has not analyzed the merits of Rangel's claim. However, Rangel obtained some portion of what he sued to recover and was designated the prevailing party, which together support the inference that he had a reasonable claim. As such, the result of this dispute may help Aetna assess future controversies, though that will "often depend on a plaintiff's initiative in bringing suit." *Carpenters S. Cal. Admin. Corp.*, 726 F.2d at 1416; *see also Smith*, 746 F.2d at 590. Of course, the Court recognizes that some plaintiffs bring frivolous lawsuits in hopes of leveraging a nuisance settlement, and awarding attorney's fees in such a scenario would not—and should not—deter trustees from opposing such claims. *See Smith*, 746 F.2d at 590. But since neither party provides any evidence of a frivolous claim here, the Court takes the final disposition as evidence supporting the reasonableness of Rangel's claim. *See id.* As such, this factor weighs in favor of awarding attorney's fees, albeit only slightly.

  **4. Whether Plaintiff Sought to Benefit Plan Participants**

Rangel contends that this litigation will benefit other plan participants because it will likely force Aetna to alter its conduct. (Mot. 9:15–17.) Aetna views this litigation as one in which Rangel undeniably sought to benefit himself. (Opp'n 9.) Furthermore, Aetna argues that no residual benefit will be forthcoming to other plan participants because this lawsuit did not involve setting new precedent or resolving a significant legal question. (*Id.*)

The Court is not persuaded by Rangel's position. Indeed, the *Hummell* inquiry asks whether the party petitioning for fees *sought* to benefit all participants and

beneficiaries, not whether others would incidentally benefit as a result. *See Hummell*, 634 F.2d at 453. By Rangel's own admission, he "simply sought to have his disability claim paid." (Mot. 9.) This weighs against awarding fees. *See Oster v. Barco of Cal. Emps.' Ret. Plan*, 869 F.2d 1215, 1222 (9th Cir. 1988) (determining that the fourth *Hummell* factor weighed against awarding fees when plaintiff sought "benefit for himself, regardless of the impact such a payment might have on the future beneficiaries of the Plan").

### 5. Relative Merits of the Positions of the Parties

"The relative merits of the parties' positions, is, in the final analysis, the results obtained by the plaintiff." *Smith*, 746 F.2d at 590. As mentioned above, Rangel settled his claim for long-term disability benefits and thus received at least a portion of what he sued to recover. *Id.* As such, the Court weighs this factor in favor of awarding attorney's fees.

After analyzing the five factors laid out by the Ninth Circuit, the Court determines that an award of fees is appropriate.

## C. Amount of Attorney's Fees

In ERISA cases, courts use the "lodestar" method to calculate attorney's fees. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). Under this approach, the court multiplies the number of hours reasonably expended by the attorney(s) on the litigation by a reasonable hourly rate. *McElwaine v. U.S. W., Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999). In determining the number of hours reasonably expended by the attorney(s) on the litigation, the court should exclude hours that are "excessive, redundant, or otherwise unnecessary." *Welch v. Metro. Life Ins., Co.*, 480 F.3d 942, 946 (9th Cir. 2007). To determine the reasonableness of an attorney's hourly rate, courts consider the billing rates charged by other counsel for similar work in the relevant community. *Id.*

Rangel seeks $62,550.00 in attorney's fees: 125.1 hours x $500/hour. (Mot. 17.) Rangel submits a summary chart of the work performed in support of his fee

request. (Summary Chart, ECF No. 19-1, Ex. B.) The Court will first address the reasonableness of the hours claimed, then will address the reasonableness of counsel's hourly rate.

### 1. The Reasonableness of Rangel's Claimed Hours

Plaintiff's counsel seeks to recover fees for a total of 125.1 hours—117.1 hours for work already completed and 8.0 hours for potential work associated with this Motion, such as appearing in court and filing reply papers. (Mot. 15.) Aetna challenges the number of claimed hours on several grounds, each of which the Court will now address.

#### a. Hours Related to Administrative Proceedings

Aetna identifies 15.8 hours of work that relates to the exhaustion of Rangel's administrative remedies. (*Id.* at 10.) Aetna argues that these hours are not recoverable as a matter of law under ERISA's attorney's fees provision. (*Id.*)

The Court agrees. The Ninth Circuit has made it remarkably clear that the ERISA statute limits fees to hours expended on litigation in court. *Cann v. Carpenters' Pension Trust Fund*, 989 F.2d 313, 316–17 (9th Cir. 1993). Accordingly, fees for hours spent on pre-litigation administrative remedies are not recoverable.

Here, Plaintiff filed his Complaint on February 15, 2015. Many of the billing entries prior to that date involve administrative communications with Aetna and with "Fehd," Aetna's Appeal Specialist. (*See* Summary Chart 12–13.) As such, the 15.8 hours billed before February 15, 2015 fall outside the scope of ERISA's attorney's fees provision.

#### b. Hours Calculating Benefits

Aetna argues that the 12.1 hours Plaintiff's counsel spent calculating benefits in this matter is unreasonable given his twenty-two years of experience. (Opp'n 13.) Moreover, Aetna notes that Plaintiff's counsel billed only 2 hours to calculate benefits on November 2 and 3, 2015, a copy of which was sent to Aetna in a November 3, 2015 email. (Ernster Decl. ¶ 2, ECF No. 20-1.) Plaintiff's counsel then billed an

additional 10.1 hours on January 9, 2016 to "Review File, Calculate Benefits and Offsets," but never provided Aetna with a revised calculation of benefits or indicated that his previous calculation had changed. (*Id.*) Plaintiff's counsel defends the 12.1 hours billed by taking the Court through his process of calculating benefits in this case: reviewing 2,427 pages of documents, locating Rangel's date of birth and salary information, determining state and Social Security disability payments as well as offsetting payments by Aetna. (Reply 11.) However, Plaintiff does not explain why these tasks were not necessary to reach the original calculation, and also why this substantial additional work did not result in a revised calculation. It is thus unclear how these tasks were reasonably necessary to advance Plaintiff's case. Thus, the Court excludes the hours for the January 9, 2016 calculation as duplicative.

### c. Mediation Preparation

Next, Aetna takes exception to the amount of time Plaintiff's counsel spent preparing for mediation. Specifically, Aetna argues that it is unreasonable for counsel to spend 3.1 hours researching the same materials he had previously reviewed during the administrative process. (Opp'n 15.) However, the Court concludes that the 17.1 hours spent in total preparing for the mediation in the days leading up to it was reasonable, especially in light of number of fact-intensive documents produced. As such, the Court is not in a position to say that counsel could or should have spent less time preparing for the mediation in light of the settlement achieved. *See Chellino v. Kaiser Foundation Health Plan*, No. C. 07-03019 CRB, 2010 WL 583970, at *3 (N.D. Cal. Feb. 16, 2010).

### d. Hours Reviewing Court Documents

Aetna attacks two specific billing matters related to Court-issued emails. First, Aetna objects to the 0.1 hours Rangel spent reviewing an ECF notification regarding a single-page ADR form.[2] Second, Aetna argues that the 1.8 hours Rangel spent

---

[2] Aetna also contends that the 1.0 hours billed by Plaintiff's counsel to review the ADR Request and email Aetna regarding his signature authorization is excessive. (*See* Opp'n 15:24.) The ADR Request is a single-page standard court form. Plaintiff's counsel blames this on a corrupted file sent

reviewing ECF Notification emails, at $500 per hour no less, is duplicative and excessive. (Opp'n 15, 17.)

Plaintiff's counsel attempts to justify his actions by offering the childish response that "Aetna has offered no evidence that it does not bill its client for this time." (Reply 13.) Of course, Plaintiff's counsel has tried to recover fees for reviewing emails from ECF before. *See Hermann v. Aetna Life Ins. Co.*, No. CV 14-09302 JAK (PJWx), at Dkt. No. 40 (C.D. Cal. Nov. 23, 2015).[3] But as the Court held in that case, "[i]t simply is not reasonable for a lawyer to bill, at [his] hourly rate, for tasks that a non-attorney employed by [him] could perform at a much lower cost." *Id.* (quoting *Davis v. City & Cnty of S.F.*, 976 F.2d 1536, 1542 (9th Cir. 1992)). Whether or not Aetna's counsel engages in the same excessive billing practices with respect to its clients is immaterial. Accordingly, the Court excludes these hours as unnecessary.

### e. Meet and Confer Regarding Fees

The parties also quibble over time spent preparing a formal fees and costs invoice. As expected, each side blames the other—Aetna claims the costs would not have been necessary if counsel had not originally balked at providing a formal invoice to support his demand; Plaintiff's counsel argues that Aetna's insistence on a formal invoice necessitated further communication between the parties. (Opp'n 16; Reply 12.) Though Aetna asks that all time billed for meet and confer efforts on this issue be deducted, the Court declines to do so. However, the Court exercises its discretion to deduct 0.6 of the requested 3.6 hours as excessive, given that Plaintiff's counsel billed an excessive amount of time for listening to voicemails and then not returning the call. (Opp'n 16; Reply 12.)

### f. Billing Entries for Document Review

The 27.2 hours billed for "reviewing client documents," resulting in $13,600 in

---

by Aetna, but fails to explain why it took an hour to resolve the issue. (Reply 12:15– 18.) The Court concludes this hour is excessive.

[3] The Court **GRANTS** Aetna's Request for Judicial Notice to the extent that the Court relies on those documents in this Order. (ECF No. 21.)

fees, represents a more contentious dispute between the parties. Aetna argues that these entries are exceedingly vague and duplicative. (Opp'n 18.) Moreover, Aetna claims that at least 974 of the 1,892 pages comprising the Administrative Record are documents submitted by Rangel and thus are duplicative of the "Client Documents" reviewed during the administrative remedies process. (*Id.* at 19.)

Plaintiff's counsel explains that if he divided the number of pages in the record by the number of hours requested, it would result in thirty seconds per page of review. (Reply 13.) Counsel then adds that he took notes as he reviewed the documents. (*Id.*) On these grounds, he contends that the time charged was appropriate. (*Id.*)

The Court agrees that roughly 24 hours to review the Administrative Record in this case was reasonable given the number of documents produced, though the Court will exercise its discretion to strike duplicative entries of "Review File" or "Review Client Documents" during litigation. Because the Court previously excluded entries billed during the administrative remedies process, only a handful of duplicative entries remain. Accordingly, the Court excludes 2.6 hours of document review as duplicative.

### g. Clerical Work

Aetna argues that attorney's fees cannot be awarded for clerical and administrative tasks. (Opp'n 21.) It claims that Plaintiff's counsel billed a total of 1.0 hours ($500) to review his calendar and review invoices, all of which could have been performed by a non-attorney employee at a much lower cost. (*Id.* at 21.)

Clerical work, which includes tasks such as mailing, calendaring, obtaining transcripts, and recording hours worked, is not billable. *See Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009); *Klein v. Law Offices of D. Scott Carruthers*, No. C15-00490 CRB, 2015 WL 3626946, at *5 (N.D. Cal. June 10, 2015) (finding that calendaring the expiration date of a Rule 68 offer to be clerical and thus not recoverable). The Court concludes that these entries here were indeed clerical and declines to award any fees arising from such work.

### h. Block Billing

Aetna also objects to several blocked-billed entries and contends it cannot discern the amount of time that Plaintiff's counsel spent on any individual task. It asks the Court to reduce these entries by 20 percent. (Opp'n 22.) Plaintiff's counsel argues that "all of this time was actually spent performing the specifically-identified tasks in such an intertwined way so as to make such entry descriptions the most accurate that can reasonably be prepared" and that this practice is not block-billing. (Reply 14 (citing *Cortes v. Metro. Life Ins. Co.*, 380 F. Supp. 2d 1125, 1133 (C.D. Cal. 2005)).)

Because there appears to be some confusion on the meaning of block billing, the Court addresses the subject here. The practice of block billing involves showing one amount of time for multiple discrete tasks. *Welch*, 480 F.3d at 948. The Court has the discretion to reduce hours when block billing makes it more difficult to determine the time spent on particular activities. *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (holding that a district court may reduce hours to offset "poorly documented" billing).

The summary of entries provided by Plaintiff's counsel includes several entries like "Telephone Call with Client; Review File; Draft Notes" or "Review Calendar; Review File." These entries are unquestionably discrete tasks and are thus instances of block billing. *Compare Cortes*, 380 F. Supp. 2d at 1113 (noting that entry for "[r]eviewing extensive client documents, *including* plan documents and medical records" did not constitute block billing) (emphasis added). However, almost all of the disputed instances of block billing include entries to "Review File," and the Court has already excluded such entries as duplicative. The Court therefore declines to further reduce fees on this basis.

### i. Fees Related to Instant Motion

Lastly, Aetna argues that fees claimed for preparing this Motion should be reduced given that Plaintiff's counsel prepared nearly identical motions in other cases.

(Opp'n 22.) Specifically, Aetna argues that counsel's "copy and paste" approach to this Motion does not warrant the 4.0 hours ($2,000) billed for the task. (*Id.* at 23.)

While it would be dubious to dock hours merely because Plaintiff's counsel borrowed content from previous motions, the Court concludes that Aetna's contention has merit. Indeed, almost all of the twelve pages in this instant Motion are lifted verbatim from previous motions filed by Plaintiff's counsel. *See e.g.*, *Hermann*, at Dkt. No. 40. As such, the Court strikes three of these hours as excessive. The Court also determines that the 8.0 additional hours requested by Rangel for work associated with this Motion is mostly unnecessary. The Court took this matter under submission, and thus there was no hearing. Further, after reviewing Plaintiff's reply brief, the Court awards Plaintiff only 2 hours for drafting the brief.

* * *

The following is a summary of the reductions discussed above:
- 15.7 hours of work prior to February 15, 2015 as related to Rangel's administrative claims;
- 10 hours for calculating benefits;
- 2.9 hours for reviewing ADR Request and ECF emails;
- 0.6 hours for Meet and Confer communications;
- 2.6 hours for document review;
- 1.0 hour for clerical work;
- 9.0 hours relating to the Motion for Fees.

This amounts to a total reduction of 41.8 hours, which reduces counsel's total hours from 125.1 to 83.3 hours.

**2. Reasonable Hourly Rate**

Plaintiff's counsel seeks the approval of an hourly rate of $500, pointing to the fact that he was recently awarded the $500 hourly rate in *Hermann v. Aetna Life Insurance Co.*, CV14-09302-JAK, at Dkt. No. 51 (C.D. Cal. Nov. 23, 2015). (Garris Decl. ¶¶ 7, 10, ECF No. 19-1.)

Counsel offers declarations and case law suggesting the prevailing rate for ERISA attorneys in the Los Angeles area is between $425 and $600 per hour and that his requested hourly rate of $500 is well within the range for an ERISA attorney with twenty-two years of experience. (*Id.* (citing *Dine v. Metro. Life Ins. Co.*, No. CV 05-3773 RSWL PLAX, 2011 WL 6131312 (C.D. Cal. Dec. 9, 2011) (awarding $600 per hour for a partner); *Nash v. Life Ins. Co.*, No. 08CV893-WQH-RBB, 2011 WL 2493738 (S.D. Cal. June 22, 2011) (awarding $425 per hour for partner).) Indeed, he considers himself an expert in ERISA matters: he adds that he will be one of the authors for the next edition of the Rutter Guide: Insurance Litigation Practice Guide, and that he has lectured at various events, including the American Bar Association's annual meeting on ERISA life insurance claims. (Garris Decl. ¶¶ 7, 10.) He also offers the declaration of Glenn Kantor to support the reasonableness of his requested rate. (Kantor Decl., ECF No. 19-1, Ex. E.) Kantor is a Los Angeles-based partner with similar experience who charges $600 per hour. (*Id.* ¶ 8.)

Aetna argues that a $500 hourly rate is unreasonable and that Plaintiff's counsel has not offered any evidence that his clients have paid or are willing to pay his hourly rate. (Opp'n 19.) However, Aetna cites no authority supporting its position that Plaintiff's counsel must show that he has actually been paid (or will be paid) this rate. Indeed, the relevant case law holds "that declarations of the prevailing market rate in the relevant community . . . are sufficient to establish the appropriate billing rate for lodestar purposes." *Davis v. City & Cty. of S. F.*, 976 F.2d 1536, 1547 (9th Cir. 1992) (brackets and internal quotation marks omitted), *opinion vacated in part on denial of reh'g,* 984 F.2d 345 (9th Cir. 1993). One case cited by Plaintiff even observes that "[f]or fee-shifting purposes . . . use of the general market rate rather than the contract rate affords some fairness, predictability and uniformity." *Carson v. Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006). While the Court is not unsympathetic to Aetna's argument that this method of determining hourly rates is unwise as a matter of policy, the Court is bound by the Ninth Circuit law on this issue.

1   Moreover, Aetna offers no evidence showing that ERISA attorneys command
2   less than $500 per hour in this community.  Indeed, Aetna does not even suggest what
3   a reasonable hourly rate would be.  Thus, the evidence submitted sufficiently supports
4   a $500 hourly rate in this case.

**D.     Costs**

Rangel seeks $501.00 in statutory costs and $1,994.90 in non-statutory costs. Aetna argues that $580.00 of Rangel's costs are vaguely reported as "Copies," Postage," "Janney Attorney Service Fee," and "WestLaw Legal Research."  (Opp'n 25.)  Aetna further argues that counsel has not demonstrated that these costs were either billed to or incurred by Rangel.  (*Id.* at 25–26.)

Costs are distinct from attorneys' fees under 29 U.S.C § 1132(g)(1).  *Trs. of Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006).  However, when it is the prevailing practice of the local legal community to bill reasonable litigation expenses to the client, lawyers may recover those expenses as fees.  *Id.*  Here, Rangel's counsel in fact billed the disputed costs to his client.  (ECF No. 19-1, Ex. B.)   Furthermore, case law in this circuit establishes that computer-based legal research and nontaxable expenses are compensable as attorney's fees when customary practice in the local market.  *See Trs. of Constr. Indus. & Laborers Health & Welfare Trust*, 460 F.3d at 1258.  As such, the Court denies Aetna's request to deduct $580.00 of the $2,495.00 requested in costs.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** Plaintiff's Motion. The Court awards $41,650.00 in attorney's fees and $2,495.00 in costs.

**IT IS SO ORDERED.**

April 12, 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**